FILED
IN CLERK'S OFFICE
2025 APR 29 PM 3: 36
U.S. DISTRICT COURT
DISTRICT OF MASS.

IN THE FEDERAL DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
Case No. 1:25-cv-11048 (ADB/JKK)

President and Fellows of Harvard College,

    *Plaintiff,*

v.

US Department of Health and Human Services, et al.,

    *Defendants.*

---

### INTERVENOR'S MOTION FOR ORDER TO SHOW CAUSE WHY DEFENDANTS MAY ACT ON BEHALF OF THE UNITED STATES (INCORPORATING AUTHORITY)

Intervenor John Doe, in propria persona, respectfully moves this Court for an Order compelling the individual Defendants to demonstrate that they can act on behalf of the United States at all, pursuant to 28 U.S.C. § 1651.

### INTRODUCTION

In a case deciding the fate of Harvard, it is fitting that two Harvard legends resolve it. The first is Laurence Tribe: "In a stunning disfigurement of the Fourteenth Amendment," the Roberts Court "impressed upon it an ahistorical misinterpretation [in *Trump v. Anderson*, 601 U.S. 100 (2024)] that defies both its plain text and its original meaning." J. Michael Luttig and Laurence H. Tribe, Supreme Betrayal, *The Atlantic*, Mar. 14, 2024. The second is the redoubtable Antonin Scalia: "This practice of constitutional revision … has rob[bed] the People of the most important liberty they asserted in the Declaration of Independence and won in the Revolution of 1776: the freedom to govern themselves." *Obergefell v. Hodges*, No. 14-556, 576 U.S. __ (2015) (Scalia, dissenting; slip op. at 2). As Donald Trump is not our President, the individual Defendants have no authority to act on his behalf.

1

## ARGUMENT

### The Constitution was written for times like these. It's time to dust it off.

The Constitution entrusted our federal judiciary with the judicial Power: the authority to apply the law of the land to the facts of every case brought before them. **It is not power to rewrite the Constitution.** "Courts are constituted by authority and they can not go beyond the power delegated to them. If they act beyond that authority, and certainly in contravention of it, their judgments and orders are regarded as nullities." *Vallely v. Northern Fire & Marine Ins. Co.*, 254 U.S. 348, 353 (1920).

Whereas the Supreme Court declared that insurrectionist Donald J. Trump is eligible to ascend to the Presidency, *Trump v. Anderson, supra.*, and enjoys an immunity from criminal prosecution almost plenary in scope, *Trump v. United States*, 603 U.S. 593 (2024), those declarations are legal nullities, as they do violence to the plain text of the Constitution and exceed their Article III authority. If a "decision is manifestly absurd or unjust, it is declared, not that such a sentence was bad law, but that it is not law." 1 Wm. Blackstone, *Commentaries on the Laws of England* *70 (1765). Or, to distill the law to essentials,

### The Constitution is NOT what judges say it is;
### it is what THE CONSTITUTION says it is.

"This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land." *U.S. Const. art. VI, cl. 2.* "Governments are instituted among men, deriving their just powers from the consent of the governed." *Declaration of Independence*, para. 2 (U.S. 1776). As Lincoln famously declared, "no man is good enough to govern another man, without the other's consent," Abraham Lincoln, Speech (on the Kansas-Nebraska Act, Springfield, IL), Oct. 16, 1854, and the Framers' Constitution

marks the outer limit of our consent. In his Farewell Address, George Washington solemnly wrote, "The Constitution which at any time exists, till changed by an explicit and authentic act of the whole people, is sacredly obligatory upon all." George Washington, *Farewell Address* (Sept. 19, 1796), as reprinted in, *The Avalon Project* (Yale Law Sch.).

Thereunder, "We the People of the United States" write our own laws, pursuant to the processes specified therein. We make the big calls, leaving the day-to-day process of lawmaking to our legislators. We hire a President to run this leviathan and judges, to resolve disputes. **And we expect our authorized agents to stay in their lanes**: "All the officers of the government, from the highest to the lowest, are creatures of the law, and are bound to obey it." *United States v. Lee*, 106 U.S. 196, 220 (1882).[1]

For five centuries, it has been universally understood that the office of the judge "is *jus dicere*, and not *jus dare*; to interpret law, and not to make law, or give law." Francis Bacon, *Essays* LVI (Of Judicature) (1620).[2] Under our system, the judicial power is "to decide what

---

[1] James Madison explains why this separation of powers is so vital, observing that

> preservation of a free government requires not merely, that the metes and bounds which separate each department of power may be invariably maintained; but more especially, that neither of them be suffered to overleap the great Barrier which defends the rights of the people. The Rulers who are guilty of such an encroachment, exceed the commission from which they derive their authority, and are Tyrants. The People who submit to it are governed by laws made neither by themselves, nor by an authority derived from them, and are slaves.[1]

In crafting the Massachusetts Constitution, John Adams characterized separation of powers as a right of the citizenry:

> In the government of this commonwealth, the legislative department shall never exercise the executive and judicial powers, or either of them; the executive shall never exercise the legislative and judicial powers, or either of them; the judicial shall never exercise the legislative and executive powers, or either of them; to the end it may be a government of laws, and not of men.

Mass. Const. Part I, art. XXX (1780).

[2] Lord Coke maintained that "[i]t is the function of a judge not to make, but to declare the law, according to the golden mete-wand of the law and not by the crooked cord of discretion." 1 E. Coke, *Institutes of the Laws of England* 51 (1642). Blackstone adds that a judge is "sworn to determine, not according to his own judgments, but according to the known laws." 1 Blackstone, *Commentaries* *69. As the legislative power is vested in Congress, U.S. Const. art. I, judges have no lawmaking power. At all. See 28 U.S.C. § 2072 (even the courts' rulemaking authority lies with Congress).

3

the law is, not to declare what it should be," *Minor v. Happersett*, 88 U.S. 162, 178 (1874), for as long as judges are at liberty to "substitute their own pleasure to the constitutional intentions of the legislature," *The Federalist* No. 78, 440 (I. Kramnick ed. 1987) (Alexander Hamilton)—or the people—it can no longer honestly be said that we are a nation governed by laws. There is no contrary authority.

The rewriting of the Constitution under a false pretense of interpreting it is "a flagrant perversion of the judicial power." *Heiner v. Donnan*, 285 U.S. 312, 331 (1932). In the words of Justice Holmes, it is 'an unconstitutional assumption of powers by courts of the United States which no lapse of time or respectable array of opinion should make us hesitate to correct." *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 79 (1938). There is no contrary authority.

A. Originalist Sins[3]



---

Mindful that "the discretion of the judge is the first engine of tyranny," 4 C. Gibbon, *The History of the Decline and Fall of the Roman Empire* 385 (1776-89) (Philips Samson, and Co. 1856), Alexander Hamilton argued that to "avoid an arbitrary discretion in the courts, it is indispensable that [judges] should be bound by strict rules and precedents, which serve to define and point out their duty in every particular case before them." The Federalist No. 78, 470 (Hamilton).

Concurrences would fill a Brandeis brief. Jefferson envisioned the judge as "a mere machine," expecting that the law "be dispensed equally & impartially to every description of men." Thomas Jefferson, Letter (to Edmund Pendleton), Aug. 26, 1776. Professor (Justice) Story adds that "A more alarming doctrine could not be promulgated by any American court, than that it was at liberty to disregard all former rules and decisions, and to decide for itself [what the law is], without reference to the settled course of antecedent principles." 1 J. Story, *Commentaries on the Constitution of the United States* 350 (1838). **There is no contrary authority.**

[3] Paul Blumenthal, Donald Trump Rips the Mask Off of John Roberts' Court in One Sentence, *Huffington Post*, Mar. 5, 2025, at https://www.huffpost.com/entry/donald-trump-john-roberts_n_67c87607e4b0931288b64c83.

> *Take all the robes of all the good judges that have ever lived on the face of the earth and they would not be large enough to cover **the iniquity of one corrupt judge**. ... Nothing can atone for, nothing can palliate his wickedness. No words can be too fiery, no edge too sharp, no thunder too mighty, and no lightning too hot, to scorch such a man.*
>
> ~Rev. Henry Ward Beecher[4]

Nothing can cover "the iniquity of one corrupt judge." As United States District Judge Helen Berryman observed in sentencing a colleague, "[c]orruption in the judiciary is worse than corruption in any other branch of government." Manuel Torres, Bodenheimer Gets 46 Months in Prison; Sentence Exceeds What Prosecutors Had Requested, *New Orleans Times-Picayune,* Apr. 29, 2004, at A-1. As Judge Bodenheimer learned the hard way, no one is above the law—not even judges.

There is no delicate way to put it: Seven federal judges have knowingly acted in a manner intended to assist an already-convicted felon "in order to hinder or prevent his apprehension, trial or punishment," 18 U.S.C. § 3, becoming accessories after-the-fact in his [alleged] crimes. Small wonder that The Don is so "thankful" for their crimes.

Donald John Trump had previously taken an oath as President "to support the Constitution of the United States," and was found by a competent court upon a trial on the merits via clear and convincing evidence that he had engaged in insurrection, as that term is used in Section 3 of the Fourteenth Amendment. *Anderson v. Griswold*, No. 23CV32577, ¶¶ 241, 298 (Dist. Ct., City & Cnty. of Denver, Nov. 17, 2023). Thus, as a matter of law and in accordance with established precedent, Trump cannot serve as our President unless and until Congress affirmatively removes his constitutional disability. Congress could have removed that disability, but they didn't. That alone ends the matter, as a matter of law.

---

[4] Rev. Henry Ward Beecher, "Works Meet for Repentance" (sermon) Dec. 20, 1868, reprinted in *Plymouth Pulpit*, Vol. 1, Iss. 15 (Ford & Co. 1869) at 241.

This reading of the Amendment is proven conclusively by the saga of Col. Nelson Tift (D-GA). He was elected to Congress and then, the Amendment was ratified. Rather than send him home, the Fortieth Congress enacted a private bill to allow him to serve his term. But when he came back after getting re-elected by the good people of Georgia, the Forty-First Congress promptly sent both him and five of his colleagues home.[5]

The Tift saga is conclusive proof that the framers of the Amendment intended and understood it to be self-executing. Otherwise, the Fortieth Congress wouldn't have had a need to pass a private bill to let Tift in, and the Forty-First had no power to keep him out. As the Constitution is self-executing, *Marbury v. Madison*, 5 U.S. 137, 177 (1803),[6] the only power Congress has with respect to potential officeholders barred from serving pursuant to Section 3 is the power to remove the disability.

As the only question before the Court in *Trump v. Anderson* was whether "the Colorado Supreme Court err[ed] in ordering President Trump excluded from the 2024 presidential primary ballot," *Trump v. Anderson*, No. 23-719, 601 U.S. 100 (2024), Pet. Br. at (i), Chief Justice Roberts' ponderous paean to policy was an absurd exercise in intellectual canasta—naked dictum, with no legal force or effect. He knew better. And he even said so: "If it is

---

[5] Upon the readmission of Georgia to representation, Tift was elected as a Democrat to the Fortieth Congress. The Fourteenth Amendment was ratified on July 9, 1868—presumably, while Tift was *en route*. But rather than remove Tift's disability, Congress passed a private bill **enabling him to serve out that Term—but no more**. "Congress enacted a private bill to remove the Section 3 disability of Nelson Tift of Georgia, who had recently been elected to represent the State in Congress. See ch. 393, 15 Stat. 427. Tift took his seat in Congress immediately thereafter. See Cong. Globe, 40th Cong., 2d Sess., 4499-4500 (1868)." *Trump v. Anderson*, 601 U.S. 100, ___, 144 S. Ct. 662, 669 & n.2. But Georgia sent six secessionists to the Forty-First Congress which the members refused to seat, including Nathan Tift. Biographical Directory: Forty-First Congress at 179 & fn. 11, https://www.govinfo.gov/content/pkg/GPO-CDOC-108hdoc222/pdf/GPO-CDOC-108hdoc222-3-41.pdf.

[6] There is no support in precedent or logic for the proposition that a constitutional provision must be activated by formal legislation to become effective. *E.g., United States v. Stanley (Civil Rights Cases)*, 109 U.S. 3, 20 (1883) ("the Thirteenth amendment, as well as the Fourteenth, is undoubtedly self-executing without any ancillary legislation"), *City of Boerne v. Flores*, 521 U.S. 507, 524 (1997) (Fourteenth); *South Carolina v. Katzenbach*, 383 U.S. 301, 325 (1966) (Fifteenth); *cf., Barron ex rel. Tiernan v. Mayor of Baltimore*, 32 U.S. 243 (1833) (Bill of Rights originally not enforceable as against the States—by design).

not necessary to decide more to dispose of a case, then it is necessary not to decide more." *Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215, 348 (2022) (Roberts, C.J., concurring in the judgment).

Every Justice in the *Anderson* majority—Roberts, Thomas, Alito, Gorsuch, Kavanaugh, Barrett—admitted that they can't change the Constitution to suit their pleasure. (**Roberts**: "Judges have power to say what the law is, not what it should be." *Obergefell v. Hodges*, 576 U.S. 644, 135 S.Ct. 2584, 2811 (2015) (Roberts, C.J., dissenting); **Thomas**: "Judicial power… is never exercised for the purpose of giving effect to the will of the Judge." *Gamble v. United States,* 587 U.S. 678, 139 S.Ct. 1960, 1982 (2019) (Thomas, J., concurring); **Alito**: "It is the job of a judge… to interpret the Constitution, not distort [it]"[7]; **Gorsuch**: "Ours is the job of interpreting the Constitution… according to its original public meaning," *Cordova v. City of Albuquerque*, 816 F.3d 645, 661 (10th Cir. 2016) (Gorsuch, J, concurring); **Kavanaugh**: "The Constitution does not grant [us] unilateral authority to rewrite" it, *Dobbs*, 597 U.S. 215, __, 142 S.Ct. 2228, 2306 (2022) (Kavanaugh, J. concurring); **Barrett**: "Partisan politics are not a good reason for deciding a case." Amy C. Barrett, *Precedent and Jurisprudential Disagreement*, 91 Tex. L. Rev. 1711, 1729 (2012-13)).

When you are so intent on reaching a desired outcome that you have to round-file *Marbury v. Madison*—the foundation of American constitutional law—you are no longer interpreting law; you're rewriting it.[8] The majority opinion in *Anderson* was a flagrant case of

---

[7] *Confirmation Hearing on the Nomination of Samuel A. Alito, Jr. To Be an Associate Justice of the Supreme Court of the United States: Hearing Before the S. Comm. on the Judiciary,* 109th Cong. 465 (2006) (statement of Samuel A. Alito, Jr.).

[8] By way of example, according to the Senator who introduced the Fourteenth Amendment to that body, Section Five of the Fourteenth Amendment was remedial in scope, "enabl[ing] Congress, in case the State shall enact laws in conflict with the principles of the amendment, to correct that legislation by a formal congressional enactment." *Cong. Globe*, 39th Cong., 1st Sess., 2768 (1868) (statement of Sen. Jacob M. Howard (R-MI)).

reverse-engineering, where those Justices didn't even maintain a pretense of doing their jobs. Judges routinely take indecent liberties with both facts and precedent, in an often-transparent effort to conceal the fact that they are not so much interpreting the law as they are writing it to suit their personal preferences, a process Judge Posner acerbically characterized as "fig-leafing." Richard Posner, *How Judges Think* at 144, 350 (2008).[9] Professor Llewellyn is more candid, writing that when a judge wants an outcome badly enough, s/he will "lie to get it." Karl N. Llewellyn, *The Common Law Tradition: Deciding Appeals* 135 (1960). And this is systemic: We entrust you with the kind of power that would tempt the character of a saint. Our only hope of salvation is that you have to look at yourself in the mirror the next day.

"There are right and wrong answers to legal questions," Clarence Thomas, *Judging*, 45 U. Kan. L. Rev. 1, 5 (1996), and clear rules of the road. "The object of construction, applied to a constitution, is to give effect to the intent of its framers ... and when the text of a constitutional provision is not ambiguous, the courts ... are not at liberty to search for its meaning beyond the instrument." *Lake County v. Rollins*, 130 U.S. 662, 670 (1889). Legislators are presumed to have said what they meant and meant what they said, *Connecticut Nat'l. Bank v. Germain*, 503 U.S. 249, 253-54 (1992) (Thomas, J; collecting 200 years' worth of cases), and "[a]bsent a clearly expressed legislative intention to the contrary, that language

---

Ironically, in the majority opinion, they quoted from the paragraph quoted above and as such, were on notice as to the Amendment framers' intent. *Trump v. Anderson*, 144 S.Ct. at 667.

[9] **Judges write to defraud.** "Opinions are overstated, rigid, seemingly inevitable. The rhetorical style is that of closure. The judge is depicted as having little choice in the matter: the decisions are strongly constrained by the legal materials." Dan Simon, *A Psychological Model of Judicial Decision Making*, 30 Rutgers L. J. 1, 11 (1998) (citations omitted); *see also* Jerome Frank, *What Courts Do in Fact*, 26 Ill. L. Rev. 645, 653 (1931) ("Opinions, then, disclose but little of how judges come to their conclusions. The opinions are often ex post facto; they are censored expositions."); Martin Shapiro, *Judges as Liars*, 17 Harv. J.L. & Pub. Pol'y. 155, 156 (1994) (arguing that "[l]ying is the nature of the judicial activity"); *see also,* Simon, *supra*, at 8–9 (summarizing the literature regarding the sense of certainty conveyed by judicial opinions and its illusory nature). Concurrences—*mostly from the bench*—would read like a Brandeis brief.

must ordinarily be regarded as conclusive." *Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 109 (1980).[10] The first step in interpretation of any provision "is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997) (Thomas, J.).

The Court could have followed *Wiltberger,* 18 U.S. at 95-96 ("Where there is no ambiguity in the words, there is no room for construction"), and called it a day. They could have simply quoted "The Notorious D.E.I.," Clarence Thomas. *Germain,* 503 U.S. at 253-54. Or they could have followed their own precedent. *Milner*, 562 U.S. at 572. They could have treated the Tift incident as dispositive of the issue before them, leaving the matter of whether Trump could serve to another day. Instead, they chose a life of crime, doing The Don a solid by helping to keep him out of prison. 18 U.S.C. § 3. **"Thank you again, I won't forget."** Such words—so casual, yet so revealing—are the currency of the corrupt. And in this case, Trump's "debt" to the *Anderson* majority is painfully apparent.

---

[10] Legislative history can be valuable for resolution of ambiguities in technical areas of the law, *see, Train v. Colorado Public Interest Research Group, Inc.,* 426 U.S. 1 (1976), but it is better used to confirm drafter intent. *E.g., United States v. Wiltberger,* 18 U.S. 76, 95-96 (1820) (per Marshall, C. J.) ("Where there is no ambiguity in the words, there is no room for construction. The case must be a strong one indeed, which would justify a court in departing from the plain meaning of words . . . in search of an intention which the words themselves did not suggest"); *Milner v. Dep't of the Navy,* 562 U.S. 562, 572 (2011) ("Those of us who make use of legislative history believe that clear evidence of congressional intent may illuminate ambiguous text. We will not take the opposite tack of allowing ambiguous legislative history to muddy clear statutory language."). See generally, Statutory Interpretation: Theories, Tools, and Trends, *Cong. Research Service*, Mar. 10, 2023, at https://crsreports.congress.gov/product/pdf/R/R45153.

Residual ambiguities are to be resolved by resort to "the saving grace of common sense." *Bell v. United States*, 349 U.S. 81, 83 (1955). The office of a judge is "to make such construction [of a law] as shall suppress the mischief, advance the remedy, and to suppress subtle invention and evasions for continuance of the mischief ... according to the true intent of the makers of the act." *Heydon's Case* [1584] 76 Eng. Rep. 637 (Exch.). *Pacta sunt servanda.* As the Constitution would not precipitate an absurd and unjust result where any plausible alternative is available, *see e.g., United States v. American Trucking Assns., Inc.,* 310 U.S. 534, 542-43 (1940); *Haggar Co. v. Helvering,* 308 U.S. 389, 394 (1940), we expect judicial decisions to make sense. As a final check, the competent judge is obliged to answer the question famously posited by Scalia: "Would the States conceivably have entered into the Union if the Constitution itself contained the Court's holding?" *Arizona v. United States*, No. 11-182, Jun. 25, 2012 (Scalia, J., bench statement at 6).

### 2. "WE HAVE A KING!" Declaring *Trump v. United States*



As Clarence Thomas observes, "[w]e should always start, when we read the Constitution, by reading the Declaration [of Independence], because it gives us the reasons why the structure of the Constitution was designed the way it was." Clarence Thomas, A Conversation with Justice Clarence Thomas, 36-10 *Imprimis* (Oct. 2007). The Framers designed their Constitution to prevent unchecked executive power—a principle rooted in their experience under King George III, as chronicled in the Declaration.

Consistent with this aim, the Framers made it a point not to grant immunity from criminal prosecution to the President. No reference can be found in the Constitution, its penumbrae, or its emanations. *See* Antonin G. Scalia, *Historical Anomalies in Administrative Law*, Y.B. Sup. Ct. Hist. Soc'y. 103 (1985). Presidential immunity has no "grounding in constitutional text, history, or precedent." *Dobbs*, 597 U.S. at 280. And when they were applying for the job of Justice, the Justices averred that "no man was above the law." As an adjunct professor at Harvard who worked for independent counsel Kenneth Starr and had written a scholarly piece on the subject, Brett M. Kavanaugh, *The President and the Independent Counsel*, 86 Geo. L.J. 2133 (1998), his was the most full-throated answer:

> "No one has ever said, I do not think, that the president is immune from civil or criminal process," Kavanaugh said. "So immunity is the wrong term to even think about in this process." He added, "But immunity is not — not the correct word, and I do not think anyone thinks of immunity. And why not? No one is above the law. And that is just such a foundational principle of the Constitution and equal justice under law."

10

Aaron Blake, *What conservative justices said about immunity — before giving it to Trump,* *Wash. Post,* Jul. 2, 2024. Although examined less directly, when asked whether a President had criminal immunity, all the other Justices in the *Anderson* majority agreed under oath that he did not.[11] Ergo, at the time they were asked to consider the case, by all rights, they should have been predisposed to not even grant certiorari review. But without any colorable support in or reference to the law—and in inexplicable disregard of their own public positions—the Roberts Six decided *sua sponte* that Presidents ought to be above the law, despite admitting that making policy decisions was far above their pay grade.

***The King can do no wrong, in a land without a king.*** To even state the majority declaration in *Trump v. United States*, 603 U.S. 593 (2024), is to refute it. But what is important here is what was taken away. One of the blessings of liberty the Framers gave us was the freedom not to be harmed by the King for any reason or no reason at all. In the Framers' day, if the President committed a crime against you, you could initiate a private criminal prosecution. *See* Emma Kaufman, *The Past and Persistence of Private Prosecution,* 173 U. Penn. L. Rev. 89 (2024-25) (chronicling the history of and judicial erosion of the right, which still is in force in some form all over the civilized world). But after *Trump v. United States*, if the President wanted to grab you off the street and send you to a gulag half-way around the world, there would literally be nothing you could do about it: He could pardon his minions and then, cower behind a cloak of judicially conjured immunity.

---

[11] "I believe that no one is above the law under our system, and that includes the President. The President is fully bound by the law, the Constitution and statutes." S. Hrg. 109–158, *Confirmation Hearing on the Nomination of John G. Roberts, Jr. to be Chief Justice of the United States* 152 (2005) (stmt. of Judge Roberts); "No man is above the law. … No man." S. Hrg. 115–208, *Confirmation Hearing on the Nomination of Hon. Neil Gorsuch to be an Associate Justice of the United States* 113 (2017) (stmt. of Judge Gorsuch); "Barrett said three times that nobody was 'above the law' while responding to questions about the president" and Alito stated that "no person in this country is above the law, and that includes the president and it includes the Supreme Court." Blake, *What conservative justices said, supra.*

## C. *Fiat Iustitia, Ruat Cœlum!!!*[12]

> *A demonstrably incorrect judicial decision, by contrast, is tantamount to making law, and adhering to it both disregards the supremacy of the Constitution and perpetuates a usurpation of the legislative power. ... When faced with a demonstrably erroneous precedent, my rule is simple: We should not follow it.*
> ~ Clarence Thomas (in *Gamble,* 139 S.Ct. at 1984)

America has been gored on the horns of a dilemma. The Presidency is in the hands of an insurrectionist—the precise evil Section 3 of the Fourteenth Amendment was enacted to prevent. And this Court must either discharge its constitutional duty faithfully or sacrifice the Constitution on the altar of expediency.

While nothing like this has ever happened in America, a passage from the Supreme Court speaks directly to the issue: "[W]hen the constitution or form of government remains unaltered and supreme, there can be no *de facto* department, or *de facto* office. The acts of the incumbents of such departments or office cannot be enforced conformably to the constitution, and can be regarded as valid only when the government is overturned." *Norton v. Shelby County,* 118 U.S. 425, 443 (1886). This is in direct contrast to the experience in medieval England during the Wars of the Roses (1455-1487), where factions vied over the kingship. As it wasn't entirely clear who the actual King was, Parliament enacted The Treason Act, 11 Hen. VII [1495], c. 1 ("noe person going wth the Kinge to the Warres shalbe attaynt of treason"), creating the de facto officer doctrine. Translated from the Middle English, it forbade legal punishment of subjects who followed the orders of the *de facto* king, irrespective of whether he was legitimate or a usurper. Importantly, it is NOT a common-law doctrine.

What the Supreme Court is telling us is that we literally cannot have a *de facto* King in America. In the stirring prose of Patrick Henry, "in America THE LAW IS KING. For as

---

[12] Translated, "Let justice be done, though the heavens fail!"

in absolute governments the King is law, so in free countries the law ought to be King; and there ought to be no other." Thomas Paine, *Common Sense* (Philadelphia, R. Bell, 1776) (emphasis in original), reprinted in pt. III, ¶ 103 (Project Gutenberg, 1994). As long as we remain governed by the Constitution, either an occupant of an office has a legal right to discharge the duties of an office, or s/he does not. There is no third option.

**Any act of a usurper is void.** This conclusion is consistent with our concept of popular sovereignty, foreign to our British forebears.[13] The Framers' views were consonant with that of Locke, who maintained that a usurper could never attain legitimate power. John Locke, *Second Treatise of Government* ch. XVIII (1689). *E.g.*, John Adams, *Novanglus No. 5*, Feb. 20, 1775; Thomas Jefferson, *Kentucky Resolution* (1798) (acts in excess of jurisdiction are void ab initio); George Washington, *Farewell Address* (Sept. 19, 1796) (the Constitution is the outer boundary of popular consent); Federalist No. 84 (Hamilton) (same).

Based on the foregoing, this Court is left with two options. First, it can adopt the cogent observation of former Harvard Dean Elena Kagan, and treat the bulk of *Trump v. Anderson*, *supra.*, as obiter dictum. As the question of whether a man in Trump's position could serve as President has never been addressed by any court, this Court is on untouched legal ground. Alternately, it can follow *Vallely, Erie*, and Blackstone, and treat *Trump v. Anderson* as extemporaneous legal theorizing, unsupported by discernible jurisdictional foundation or historical fidelity. And again, we return to Scalia. As he so adroitly put it, "the Constitution

---

[13] Sovereignty—the *jura summa imperii*—was retained by the people, holding it as tenants-in-common. Governments are our authorized agents, with powers enumerated in constitutions. Our national Constitution (and its predecessor) is a treaty between thirteen co-sovereigns, expressly delegating a portion of their delegated sovereignty. See e.g., N.H. Const. part 1, art. 7. You are either our authorized agent, or you are not. As a judge, your sinecure is conditioned on maintenance of "good Behaviour," U.S. Const. art. III, § 1, which basically means that if you don't do your job, you lose your job. *See generally,* Raoul Berger, *Impeachment of Judges and "Good Behavior" Tenure*, 79 Yale L.J. 1475 (1970). (Berger is another Harvard legend.) "President" is an office held by an agent for an express term of years; both the terms of his agency and the qualifications for holding the office are expressly specified.

that I interpret and apply is not living but dead—or, as I prefer to put it, enduring. It means today not what current society (much less the Court) thinks it ought to mean, but what it meant when it was adopted." Antonin Scalia, God's Justice and Ours, *First Things* (May, 2002) at 17. And the Tift saga tells us precisely what the framers of that provision meant. The historical record on Section 3's original meaning permits no reasonable doubt.

As the acts of a pretender to the American throne are void, it legally and logically follows that acts taken by his underlings are equally void. Restatement (Third) of Agency § 1.01 ("Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control.") After all, if there is no principal, there can be no agent acting on the principal's behalf. As Donald Trump was never eligible to serve, his Cabinet hires are void under the Appointments Clause, U.S. Const. art. II, § 2, cl. 2, and their bona fides may be challenged in a timely quo warranto action. *Ryder v. United States*, 515 U.S. 177 (1995); *cf.*, *United States v. L.A. Tucker Truck Lines*, 344 U.S. 33 (1952) (untimely challenge in the face of a minor appointment defect overlooked). As the challenge is timely, the Defendants' actions are void.[14]

The Constitution is a stern mistress, brooking no infidelity. Following her demands is not always easy or convenient. But "[i]n a government of laws, existence of the government will be imperilled if it fails to observe the law scrupulously." *Olmstead v. United States*, 277 U.S. 438, 485 (1928) (Brandeis, J., dissenting).

---

[14] American courts have cobbled together a common law version of the English *de facto officer* doctrine. But as was the case with the Statute of Treason, "[t]he doctrine of de facto officers is primarily for the protection of third persons." *Ensher, Alexander & Barsoom, Inc. v. Ensher*, 238 Cal. App. 2d 252, 257 (Cal. Ct. App. 1965). A de facto officer acting in good faith can expect to be paid, *State ex rel. Witten v. Ferguson*, 76 N.E. 2d 886 (Ohio 1947), but most of the case law appears far afield.

April 25, 2025

Clerk of the Court
U.S. District Court
   for the District of Massachusetts
John Joseph Moakley U.S. Courthouse
1 Courthouse Way
Boston, MA 02210

Dear Sir or Madam:

Enclosed please find an original (unstapled, for scanning) and two copies of documents to be filed in *Harvard v. HHS*, Case No. 1:25-cv-11048 (ADB/JKK), and a third copy of same to be stamped and returned in the enclosed envelope. As I am filing *in pro per* and do not have PACER privileges in this Court, it is my understanding that this is my only option.

I will submit appropriate signatures and contact information when the Court approves my request to file anonymously. For now, I can be contacted at manncoulter.fox@gmail.com if you have any questions.

Regards, "John Doe"

## CONCLUSION



In a case involving Harvard, one turns to a man who is fleeing Yale—celebrated historian Timothy Snyder. The past is prologue, and history has a nasty tendency to rhyme. We are in 1933, in Berlin. The Reichstag has fallen, and men more powerful than most could ever dream of being (Paul, Weiss) are slavishly bending the knee to King Don. Snyder recovered two lessons from the bowels of antiquity. The first? "Do not obey in advance."[15]

But we are also in Boston, the home of the bean and the cod, Where the Lowells talk only to the Cabots, And the Cabots talk only to God. Intervenor despises Harvard, because their graduates think they are better than me. But Snyder's second lesson? "Defend institutions." *Id.* Lawyers cut deals. Love it or hate it, America needs Harvard not to fold. "If none of us is prepared to die for freedom, then all of us will die under tyranny." *Id.*

Intervenor is here to defend America, by demanding that the Defendants demonstrate that they have a legal right to speak for me. This Motion should be granted.

Respectfully submitted this 25th day of April, 2025,

John Doe (signed under seal, pending
outcome of motion to preserve anonymity)

---

[15] Timothy Snyder, Twenty Lessons on Fighting Tyranny from the Twentieth Century, Scholars Strategy Network (Oct. 3, 2018), (last visited Apr. 25, 2025).